Submitted July 20, pursuant to Rule 3.6, Rules of Procedure Relative to Admission, Discipline, Resignation and Reinstatement, accused suspended for 18 months, with the final six months of suspension stayed, subject to application for reinstatement pursuant to BR 8.1 August 24, 1987

In re Complaint as to the Conduct of

# EDWIN D. HARRIS,
*Accused.*

(OSB 86-23, 86-24, 86-47; SC S34290)

741 P2d 890

PER CURIAM

## PER CURIAM

Before us is a document entitled "STIPULATION FOR DISCIPLINE" ("stipulation") signed and verified by the accused, Edwin D. Harris. Following his verification is a statement signed by the General Counsel of the Oregon State Bar (Bar), from which we infer that the "stipulation" has been reviewed by the General Counsel and approved by the State Professional Responsibility Board. The "stipulation" has been filed with the State Court Administrator for review by this court together with a letter signed by an Assistant General Counsel of the Bar stating that the accused and the Bar have entered into the "stipulation."

BR 3.6, in pertinent part, provides:

"(a) *Application.* Any formal disciplinary complaint may be disposed of * * * by a stipulation for discipline, entered into at any time after the service of the formal complaint upon the accused.

"* * * * *

"(c) *Stipulation for Discipline.* A stipulation for discipline shall be verified by the accused and shall include:

"(i) A statement that the stipulation has been freely and voluntarily made by the accused;

"(ii) A statement that explains the particular facts and violations to which the Bar and the accused are stipulating;

"(iii) A statement that the accused agrees to accept a designated form of discipline in exchange for the stipulation;

"(iv) A statement of the accused's prior record of reprimand, suspension or disbarment, or absence of such record.

"(d) *Approval of SPRB.* * * * [S]tipulations shall be reviewed by General Counsel and approved by the SPRB. The * * * stipulation, if acceptable to the SPRB and the accused, shall be filed by General Counsel with the state chairperson of the Disciplinary Board if the discipline to be imposed does not exceed a 60-day suspension, otherwise it shall be filed with the State Court Administrator for review by the court.

"(e) *Review by Disciplinary Board or Court.* The Disciplinary Board or the court, as the case may be, shall review the

* * * stipulation. * * * If * * * the court approves the * * * stipulation an opinion shall be issued so stating. * * *"

The Bar filed and served a formal complaint against the accused. During the pendency of the proceedings flowing therefrom, the Bar and the accused discussed the resolution of the matter, and the "stipulation" is the result of those discussions.

Despite the implication of BR 3.6(c)(ii) that a stipulation is a two-party instrument between the Bar and the accused, the present "stipulation" submitted for approval by the court is signed only by the accused. The body of the "stipulation" does not contain a statement by the accused that the stipulation is freely and voluntarily made; only the verification following the accused's signature to the document contains the statement required by BR 3.6(c)(i). BR 3.6(c)(iii) and (iv) are met.

■ We construe the verification and the Bar's cover letter stating that the Bar has entered into the "stipulation" to satisfy the requirements of BR 3.6(c)(i) and (ii), but we believe that it would be better were the instrument proper to contain the required statement about voluntariness and that a stipulation be a two-party instrument. *See In re Heath,* 292 Or 562, 566, 640 P2d 617 (1982), for a similar enjoinder to follow a former rule dealing with discipline by consent. The foregoing explains why we have placed quotation marks around the word "stipulation" for the instrument before us; henceforth, we shall refer to it without quotation marks.

The Bar's formal complaint alleged seven causes. The stipulation provides that the Bar withdraws the charges in the second and fourth causes, and we shall not address them at all. The stipulation also provides that a part of the third cause is withdrawn, and we shall note that when addressing that cause. The accused stipulates that the allegations in the first, fifth, sixth, seventh and part of the third causes are true.

## FIRST CAUSE

■ The accused entered into a contract with one Rogers for Rogers to remodel the accused's office. The accused drafted a promissory note in Rogers' favor for $13,356.05, the cost of remodeling, bearing interest at the rate of 12 percent per annum until paid. The accused had in his clients' trust account money that had come from Rogers' former partners.

The accused undertook to represent Rogers regarding the completion of a legal action between Rogers and his former partners. During the course of that representation, the accused executed another promissory note to Rogers for $6,000, supposedly evidencing an obligation for money lent by Rogers to the accused. The money actually came from the accused's clients' trust fund, and the money on deposit therein was that which came from Rogers' former partners. Still later during his representation of Rogers, the accused borrowed $2,000 from Rogers and drafted and executed a promissory note to Rogers for that amount with interest at 12 percent per annum. The accused and Rogers had differing interests with respect to the loans, and Rogers expected the accused to exercise his professional judgment for Rogers' protection. At no time during this course of events did the accused make to Rogers full disclosure of their differing interests, and at no time did the accused recommend that Rogers seek independent legal advice before the loans were made.

The accused accepted and continued employment as a lawyer for Rogers when the exercise of his independent professional judgment on behalf of Rogers could reasonably be expected to be affected by his own business, property or personal interests, without making full disclosure of their differing interests, without obtaining informed consent of Rogers to that employment and without recommending that Rogers seek independent legal advice.

The accused admitted to the Bar that his financial dependence on Rogers impaired his ability to advise Rogers as to the proper legal action to be taken by Rogers in these matters.

This conduct by the accused violated DR 5-101(A) and 5-104(A) of the Code of Professional Responsibility.[1]

---

[1] DR 5-101(A) provides:

"Except with the consent of the lawyer's client after full disclosure, a lawyer shall not accept employment if the exercise of the lawyer's professional judgment on behalf of the lawyer's client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests. Full disclosure shall include the recommendation that the client seek independent legal advice concerning the continued representation by the lawyer."

DR 5-104(A) provides:

"A lawyer shall not enter into a business transaction with a client if they have

## THIRD CAUSE

■ The Bar charged that the accused violated DR 5-101(A), 5-104(A) and 5-105(A) and (B) by his conduct now described but has withdrawn the charge of violation of DR 5-105(A) and (B).

During his representation of Rogers already described above, the accused solicited Rogers to invest in the purchase and rental of an apartment house to be rented on a cash basis to migrant farm workers. The accused formed a corporation, which held the property on behalf of the accused, Rogers and the partners. The accused was president and legal counsel for the corporation. The accused and Rogers had differing interests in that business transaction, and Rogers expected the accused to exercise his professional judgment for Rogers' protection. The accused did not explain to Rogers how their interests differed and did not advise him to seek independent legal advice before entering into the transaction. It follows that the accused could not obtain informed consent by Rogers to represent Rogers in these circumstances. The accused has admitted to the Bar that his business relationships with Rogers impaired his ability adequately to advise Rogers on legal matters.

The accused fell delinquent on his payments on the promissory notes described in the first cause of complaint and to remedy that agreed to make payments on a mortgage on property owned by Rogers. After making several payments, the accused ceased to make payments but did not notify Rogers. The mortgagee threatened foreclosure, but Rogers was able to cure the default. Rogers attempted to meet with the accused about this transaction, but the accused avoided Rogers by failing to keep appointments and fleeing when he saw Rogers.

The accused accepted and continued employment as lawyer for Rogers and the corporation when the exercise of his independent professional judgment on behalf of these clients both was and could be reasonably expected to be affected by

---

differing interests therein and if the client expects the lawyer to exercise the lawyer's professional judgment therein for the protection of the client, unless the client has consented after full disclosure. Full disclosure shall include a recommendation that the client seek independent legal advice."

the accused's own financial, business, property and personal interests, all without obtaining his clients' consent after full disclosure and without recommending that the clients seek independent legal advice.

This conduct violated DR 5-101(A) and 5-104(A).

## FIFTH CAUSE

■ Rogers filed a complaint with the Bar concerning the conduct of the accused. The General Counsel of the Bar wrote to the accused asking for a response to Rogers' complaint. The accused did not respond, nor did he assert any excuse for failure to respond. This failure violated DR 1-103(C) of the Code of Professional Responsibility, which provides:

"A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege."

## SIXTH CAUSE

One Gardner filed a complaint with the Bar concerning conduct of the accused. The General Counsel's office of the Bar wrote to the accused requesting a response to the complaint, but the accused failed to respond to the request and asserted no excuse for failure to respond. This conduct violated DR 1-103(C).

## SEVENTH CAUSE

One Hettrick complained to the Bar concerning conduct of the accused. A letter was sent to the accused by the General Counsel's office requesting a response to the complaint. The accused failed to respond and asserted no reason for failure. This conduct violated DR 1-103(C).

## SANCTION

The accused is under the care of a psychiatrist and is not presently engaged in the practice of law. The Bar and the accused have stipulated that he is to be suspended from the practice of law for a period of 18 months, but that six months of the suspension shall be stayed "subject to his applying for

reinstatement pursuant to Rule of Procedure 8.1 and, if reinstated, complying with terms of probation for two years from the date of his reinstatement." During the term of probation the accused is to comply with the following provisions:

"(1) The Accused shall meet on a regular basis (not less than once per month) with a psychiatrist or psychologist mutually agreed upon by the Bar and the Accused at the Accused's expense to obtain counsel and psychotherapy. Such counseling and psychotherapy shall continue through the term of the Accused's probation unless and until the Bar is notified by report of the Accused's psychiatrist or psychologist that continued treatment is no longer necessary.

"(2) The Accused shall file with the Bar on a bimonthly basis a report by his psychiatrist or psychologist describing the counseling and psychotherapy the Accused is receiving and the progress the Accused is making in avoiding problems which may affect his ability to competently, ethically and diligently practice law.

"(3) The Accused shall meet on a regular basis (not less than once a month) with a member of the Bar mutually agreed upon by the Bar and the Accused to review the status of his activities in the practice of law.

"(4) The Accused shall file with the Bar on a bimonthly basis a report by the member assigned to meet with him describing the status of the Accused's activities in the practice of law and the progress the Accused is making in avoiding problems which may affect his ability to competently, ethically and diligently practice law.

"(5) If the Accused fails to comply with the conditions set forth in paragraphs (1), (2), (3) or (4), the Bar may move the Supreme Court to impose any portion or all of the Accused's suspension that has been stayed.

"(6) The Accused waives any claim of attorney-client or physician-patient privilege regarding the reports submitted to the Bar as a result of this stipulation.

"(7) The term of the Accused's probation shall be two years from the date his reinstatement is approved by the Supreme Court pursuant to BR 8.1."

The Bar and the accused stipulate that the accused has no prior record of reprimand, suspension or disbarment.

The court approves the stipulation and the sanction. The accused is suspended from the practice of law for a period

of 18 months, but the final six months of the suspension shall be stayed, subject to his applying for reinstatement pursuant to BR 8.1, and, if reinstated, he will be on probation for two years from the date of reinstatement subject to the terms set forth in this opinion.